# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Court File No.: 22-CV-283 (KMM/ECW) |
| Plaintiff, | |
| v. | |
| | **DECLARATION OF DAMON L. WARD** |
| Abdala Aden *dba* LaFoole Tax Services, | |
| Defendant. | |

STATE OF Minnesota )
                             )ss.:
COUNTY OF Hennepin )

Damon L. Ward declares as follows:

1. That I am over 18 years of age, of sound mind and otherwise competent to make this Declaration. The evidence set out in the foregoing Declaration is based on my personal knowledge.

2. That I am one of the Defendant's attorneys in this matter, and I am personally familiar with the pleadings during this litigation and submits this declaration in support of the Memorandum in Opposition to Plaintiff's Motion for Attorney's Fees and Cost..

3. That after commencement of this lawsuit, I met and conferred with opposing counsel, Elizabeth A. Kirby, via e-mail and teleconference to discuss the production of certain personal and business information of Mr. Aden.

4. We discussed that Mr. Aden had represented that he no longer had the requested information and could not otherwise recall the requested and ordered information to

prepare any referenced list.

5. Attached hereto as Exhibit 1 is a true and correct copy of a Certified (by the Library of Congress) Congressional Research Service Report titled Attorney's Fees and the Equal Access to Justice Act: Legal Framework.

6. Attached hereto as Exhibit 2 is a true and correct copy of a billing transaction list provided in the *Bd. of Trs. of the Teamsters Joint Council 32 - Employers Health & Welfare Fund v. H. Brooks & Co.*, No. 21-CV-1455 (KMM/DJF (D. Minn. December 1, 2022).

FURTHER YOUR DECLARANT SAITH NOT.

I declare under penalty of perjury that everything I have stated in this document is true and correct to the best of my knowledge and recollection. In addition to the signature, the date of signing and the county and state where the document was signed shall be noted on the document.

/s/*Damon L. Ward*
Damon L. Ward

Date: January 9, 2023

 

June 10, 2019

# Attorney's Fees and the Equal Access to Justice Act: Legal Framework

In 1980, Congress enacted the Equal Access to Justice Act (the EAJA, or the Act) and significantly expanded the federal government's liability to pay the attorney's fees of parties that prevail against the government in litigation or administrative proceedings. This In Focus explains the state of the law before the EAJA was enacted, outlines the government's liability for attorney's fees under the EAJA, and briefly discusses relevant congressional considerations concerning the EAJA.

## Immunity and the American Rule

Absent express action by Congress, the U.S. government is not liable for opponents' attorney's fees for two reasons. First, the default rule in the United States, known as the "American rule," provides that each party pays its own litigation costs, regardless of the outcome of a case. (The alternative regime, known as the "English rule," provides that the losing party pays the winner's attorney's fees.) Second, the government enjoys sovereign immunity, meaning that it may not be sued—and therefore may not be required by a court to pay another party's attorney's fees—unless it expressly waives its immunity.

Congress has waived the federal government's sovereign immunity in many contexts. Unless Congress expressly provides otherwise, however, the American rule applies to suits where the United States is a party, and each party pays its own fees. Indeed, although the American rule is subject to certain court-created exceptions in litigation between private parties, courts have generally declined to apply those exceptions to the federal government.

Even in contexts where Congress has permitted suits against the federal government, without access to fee awards against the United States, litigation costs may deter would-be plaintiffs from bringing suit. Before enacting the EAJA, Congress tried to address that concern piecemeal, enacting numerous fee-shifting statutes that allowed awards of fees against the United States only in specific types of cases, such as cases arising under Title VII of the Civil Rights Act or the Freedom of Information Act. With the EAJA, Congress went further by more generally allowing fee-shifting in cases involving the United States.

## The Equal Access to Justice Act

Congress enacted the EAJA temporarily in 1980 before reauthorizing the statute permanently in 1985. Motivated in part by a desire to deter government overreach and wrongdoing, the Act significantly departed from the default American rule by permitting awards of attorney's fees against the federal government in many types of judicial and administrative proceedings. The statute includes three key provisions. First, 28 U.S.C. § 2412(b) provides that "in any civil action brought by or against the United States" or any U.S. agency or official, the government "shall be liable" for attorney's fees "to the same extent that any other party would be liable under the common law or under the terms of any statute which specifically provides for such an award." Section 2412(b) thus expands any existing statutory and court-created exceptions to the American rule to apply to the federal government as they would to a private party.

Second, 28 U.S.C. § 2412(d) requires a court to award attorney's fees and costs to a party prevailing against the United States in a civil action, "unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust." The Supreme Court has interpreted the substantial justification standard to require the government to prove that its litigating position was reasonable in both fact and law. Third, 5 U.S.C. § 504 authorizes awards of attorney's fees in proceedings before an administrative agency on the same terms as Section 2412(d).

The EAJA provides that fee awards shall be paid by the defendant agency. In practice, however, the Department of Justice often advances funds and then receives gradual reimbursements from the agency.

## Scope of Application

The EAJA's fee award provisions apply "except as otherwise specifically provided by statute." Put another way, the EAJA does not supersede other, more specific federal laws that allow or restrict fee awards.

The Act's judicial fee award provisions apply only to civil actions, meaning they do not authorize awards of attorney's fees in criminal proceedings. Section 2412(d) further excludes cases sounding in tort. Section 2412(d) applies to suits in "any court," which includes the federal district and appellate courts, the U.S. Court of Federal Claims, and the U.S. Court of Appeals for Veterans Claims. It is unclear whether bankruptcy courts can award fees under the Act, but they may recommend that the district court do so.

The provision related to administrative proceedings applies to "adversary adjudication," including agency proceedings under the Administrative Procedure Act and certain other statutes. Petitions for judicial review of agency action are included among the civil actions subject to Section 2412(d).

## Eligibility

The EAJA permits recovery of fees by both organizations and individuals, but Sections 504 and 2412(d) limit the parties that may receive a fee award. First, those provisions only allow for one-way fee shifting: "a prevailing party

other than the United States" may receive attorney's fees, while the government may not. Second, only an individual with a net worth of $2 million or less, or the owner of a business or other organization worth $7 million or less and with no more than 500 employees may recover an award of attorney's fees under Sections 504 and 2412(d). Nonprofits exempt from taxation under Section 501(c)(3) of the Internal Revenue Code are not subject to the size and net worth caps.

### Limitations on Fees

The EAJA caps the rate for recoverable attorney's fees at $125 per hour (lower than the prevailing rates in many legal markets), subject to exceptions due to cost of living increases or the presence of "a special factor, such as the limited availability of qualified attorneys for the proceedings involved." In *Pierce v. Underwood*, 487 U.S. 552 (1988), the Supreme Court interpreted the "special factor" language narrowly. The Court held that it was improper to increase fees based on general conditions in the legal market. A departure from the base rate was warranted only when a case required "attorneys having some distinctive knowledge or specialized skill needful for the litigation in question," such as an expertise in patent law, foreign law, or foreign language.

### What Is A Prevailing Party?

One of the most often litigated questions under the EAJA is when a litigant may be considered a "prevailing party" entitled to attorney's fees. In *Texas State Teachers Association v. Garland Independent School District*, 489 U.S. 782 (1989), the Supreme Court held that a party need not prevail on all of its claims, or even on the "central issue" in the case, but only on "any significant issue in litigation which achieve[d] some of the benefit the parties sought in bringing the suit." A party also need not prevail after a full trial on the merits. A favorable settlement may support a finding that a party prevailed, if embodied in a judicially enforceable consent decree. However, absent an enforceable agreement, a party is not deemed to have prevailed just because a proceeding caused the government to alter its behavior.

Prevailing party status is a threshold issue determining the potential availability of *any* attorney's fees under the EAJA. It is unnecessary that the prevailing party recover substantial monetary damages. In *Farrar v. Hobby*, 506 U.S. 103 (1992), the Court held that a litigant who received a nominal damages award of one dollar had prevailed because such an award "materially alters the legal relationship between the parties." However, the Act also provides that an award of fees must be "reasonable." In *Farrar*, the Court explained that the degree of the plaintiff's success relative to the other goals of the lawsuit is critical to determining the size of a reasonable fee, holding that a plaintiff who prevails in part may nonetheless receive no fees at all.

### Considerations for Congress

Commentators have raised concerns related to the EAJA's cost and whether fee awards are benefiting appropriate recipients. Proposed measures to curb costs include removing the "special factor" exception to the fee cap, which some argue has been applied too permissively by lower courts. By contrast, the Equal Access to Justice Reform Act, first introduced in 2003, would have attempted to "remove existing barriers and inefficiencies in EAJA," including by broadening the definition of "prevailing party," raising the net worth caps, and eliminating the government's substantial justification defense.

Other commentators allege that EAJA fee awards have spurred abusive litigation by nonprofit organizations with in-house lawyers. They assert that nonprofits may seek purportedly reasonable fees that exceed their actual labor costs and use the resulting awards to bring numerous claims based on alleged procedural violations that cause the organizations no tangible injury. Proposed amendments to the EAJA including the Government Litigation Savings Act of 2011 would have sought to address that concern by requiring any party seeking a fee award to have "a direct and personal monetary interest" in the adjudication or civil action, "including because of personal injury, property damage, or unpaid agency disbursement."

Concerns about the EAJA's costs and the destination of fee awards are difficult to evaluate because there is little recent data on EAJA fee awards. As originally enacted, the EAJA required annual reports to Congress on the number, nature, and amount of awards of fees under the statute. However, Congress repealed the reporting requirement in 1995. The John D. Dingell, Jr. Conservation, Management, and Recreation Act (P.L. 116-9), enacted on March 12, 2019, included an "Open Book on Equal Access to Justice" section that reinstated and updated the reporting requirements. The new provisions require the Administrative Conference of the United States to make annual reports to Congress and to maintain a searchable online database containing information about each fee award under the EAJA, including the amount, the recipient, and the basis for the finding that the government's position was not substantially justified. Once the new reporting requirements take effect, Congress may potentially be better equipped to evaluate whether further reforms of the EAJA are warranted.

**Joanna R. Lampe**, Legislative Attorney

**IF11246**

## Disclaimer

This document was prepared by the Congressional Research Service (CRS). CRS serves as nonpartisan shared staff to congressional committees and Members of Congress. It operates solely at the behest of and under the direction of Congress. Information in a CRS Report should not be relied upon for purposes other than public understanding of information that has been provided by CRS to Members of Congress in connection with CRS's institutional role. CRS Reports, as a work of the United States Government, are not subject to copyright protection in the United States. Any CRS Report may be reproduced and distributed in its entirety without permission from CRS. However, as a CRS Report may include copyrighted images or material from a third party, you may need to obtain the permission of the copyright holder if you wish to copy or otherwise use copyrighted material.

| Date: 12/02/2022 | | | | **Detail Transaction File List**<br>Andrew, Bransky & Poole, P. A. | EXHIBIT 2 | Page: 1 |

| Client | Trans Date | Atty | Hours to Bill | Amount | |
|---|---|---|---|---|---|
| **Fees** | | | | | |
| 8296.500 | 05/11/2022 | 6 | 1.00 | 230.00 | Begin draft of motion for contempt, research contempt motions in ERISA cases.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 05/13/2022 | 6 | 1.50 | 345.00 | Draft memo of law in support of motion for contempt, research substitute service issues.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 06/21/2022 | 6 | 0.50 | 115.00 | Work on motion for contempt - draft motion, notice, exhibit index, certificate of compliance.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 06/21/2022 | 6 | 0.50 | 115.00 | Review and revise memo of law and declaration in support of motion.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 06/23/2022 | 6 | 0.20 | 46.00 | Phone call to courtroom deputy to schedule motion hearing (out of office).<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 07/07/2022 | 6 | 0.40 | 92.00 | Second phone call to Judge Tunheim's chambers, call to Magistrate's chambers.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 07/07/2022 | 6 | 0.60 | 138.00 | Review and edit Motion for Contempt and supporting documents.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 07/08/2022 | 6 | 0.40 | 92.00 | Review e-filings, e-mail to chambers with proposed order.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 07/08/2022 | 6 | 0.20 | 46.00 | Submit service request to Metro Legal.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 07/18/2022 | 6 | 0.60 | 138.00 | Review Order to Show Cause, review prior service attempts.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 07/18/2022 | 6 | 0.20 | 46.00 | Letter to Hennepin County Sheriff for service on Jaynes.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 07/19/2022 | 6 | 0.20 | 46.00 | Letters to Ramsey and Washington County Sheriff's Office with service requests.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND<br>*RE:  H. Brooks Collection |
| 8296.500 | 07/21/2022 | 6 | 0.80 | 184.00 | Research:  Contempt of court and substitute service under Minn. Stat. 5.25.<br>TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |

Date: 12/02/2022 　　　　　　　Detail Transaction File List　　　　　　　Page: 2
　　　　　　　　　　　　　　　Andrew, Bransky & Poole, P. A.

| Client | Trans Date | Atty | Hours to Bill | Amount | |
|---|---|---|---|---|---|
| **Fees** | | | | | |
| | | | | | *RE: H. Brooks Collection |
| 8296.500 | 07/28/2022 | 6 | 0.20 | 46.00 | Review certificate of non-service from Washington County Sheriff's Office. |
| | | | | | TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |
| | | | | | *RE: H. Brooks Collection |
| 8296.500 | 08/04/2022 | 6 | 0.20 | 46.00 | Review certificate of service from Hennepin County Sheriff, e-filing with court. |
| | | | | | TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |
| | | | | | *RE: H. Brooks Collection |
| 8296.500 | 08/22/2022 | 6 | 0.20 | 46.00 | Emails with attorney for Jason Jaynes. |
| | | | | | TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |
| | | | | | *RE: H. Brooks Collection |
| 8296.500 | 08/24/2022 | 6 | 0.50 | 115.00 | Phone call from personal attorney for Jason Jaynes regarding debt to Health Fund. |
| | | | | | TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |
| | | | | | *RE: H. Brooks Collection |
| 8296.500 | 09/13/2022 | 6 | 0.50 | 115.00 | Review of file materials, case law research and pleadings in preparation for hearing. |
| | | | | | TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |
| | | | | | *RE: H. Brooks Collection |
| 8296.500 | 09/14/2022 | 6 | 5.00 | 1,150.00 | Travel from Duluth to St. Paul for Order to Show Cause Hearing, return travel to Duluth. |
| | | | | | TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |
| | | | | | *RE: H. Brooks Collection |
| 8296.500 | 09/14/2022 | 6 | 0.40 | 92.00 | Attend Order to Show Cause Hearing, review minute entry. |
| | | | | | TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |
| | | | | | *RE: H. Brooks Collection |
| **Total for Fees** | | Billable | 14.10 | 3,243.00 | |
| **Expenses** | | | | | |
| 8296.500 | 07/13/2022 | 6 | | 53.00 | Metro Legal - Service Process |
| | | | | | TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |
| | | | | | *RE: H. Brooks Collection |
| 8296.500 | 07/19/2022 | 6 | | 220.80 | Service Process Requests from 3 counties: Ramsey, Hennepin and Washington. |
| | | | | | TEAMSTERS JOINT COUNCIL 32 -EMPLOYERS H&W FUND |
| | | | | | *RE: H. Brooks Collection |
| **Total for Expenses** | | Billable | 0.00 | 273.80 | |
| **GRAND TOTALS** | | | | | |
| | | Billable | 14.10 | 3,516.80 | |